IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWIGHT ECHOLS, JR. | : | CIVIL ACTION |
| | : | |
| | : | NO. 11-3280 |
| v. | : | |
| | : | |
| SUPERINTENDENT T. BICKELL, et al. | : | |

**OPINION**

Slomsky, J.                                                                                              January 28, 2013

**I.    INTRODUCTION**

Before the Court is the Petition of Dwight Echols, Jr. ("Petitioner") for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner seeks relief based on alleged violations of his Sixth Amendment right to effective assistance of counsel. For purposes of this Opinion, the Court has considered the Petition for a Writ of Habeas Corpus (Doc. No. 1), District Attorney of Chester County's ("Respondent") Answer to the Petition (Doc. No. 7) and accompanying Appendices ("Resp.'s Appx."), Petitioner's Motion for Leave to Respond to Notice of Report and Recommendation Filed by Respondent (Doc. No. 10), United States Magistrate Judge David R. Strawbridge's Report and Recommendation (Doc. No. 11), Petitioner's Reply to the Report and Recommendation (Doc. No. 15), and the pertinent state court record.

Following a review of the filings by the parties and the pertinent record, Magistrate Judge Strawbridge issued a Report recommending that the Petition for a Writ of Habeas Corpus be denied and that a certificate of appealability not be issued. (Doc. No. 11.) Petitioner filed a

Reply to the Report and Recommendation containing his objections. (Doc. No. 15.) For reasons that follow, the Court will approve and adopt Magistrate Judge Strawbridge's Report and Recommendation (Doc. No. 11) and deny the Petition for a Writ of Habeas Corpus (Doc. No. 1).

## II. FACTUAL BACKGROUND

On April 5, 2007, Petitioner received a sentence of life imprisonment without the possibility of parole in the Chester County Court of Common Pleas after a jury found him guilty of first degree murder, third degree murder, aggravated assault, and possession of a criminal instrument. (Doc. No. 11 at 1-2.) The state court described the facts of the case as follows:

> In the early morning hours of May 22, 2005, Keith Shelton was shot to death in the vicinity of the Elks Club in the City of Coatesville, Chester County, Pennsylvania. According to witnesses he was shot from a distance, less than the width of a street, and at point blank range. [Petitioner] was identified by two witnesses as the assailant.
>
> [Petitioner] was represented by privately retained counsel at his preliminary hearing where he was held for court on criminal homicide and related charges. Due to financial issues[,] private counsel withdrew and the Public Defender of Chester County undertook [Petitioner]'s representation on December 12, 2005. Loreen M. Kemps, Esquire was assigned to represent [Petitioner] and proceeded to file appropriate motions, etc.
>
> Prior to trial [Petitioner] expressed dissatisfaction with Ms. Kemps' stewardship [by filing a motion to dismiss her as his counsel] of his case prompting [Judge Gavin] to conduct an on the record colloquy. After considering [Petitioner]'s comments and his pro se Motion to Dismiss and/or Appoint Counsel, [Judge Gavin] denied same.
>
> The case proceeded to trial on April 2, 2007. [Petitioner] was convicted on all counts on April 4, 2007. On April 5, 2007, [Judge Gavin] sentenced him to the mandatory life sentence for first degree murder.

(Doc. No. 11 at 2-4 (internal citations omitted) (quoting Commonwealth v. Echols, No. CP-15-CR-0005078-2005 at 1-2 (Chester Ct. Comm. Pl. Aug. 12, 2009).)

After his trial, Petitioner sought relief, pro se, under the Pennsylvania Post-Conviction

2

Relief Act, 42 Pa. Cons. Stat. §§ 9541-46 ("PCRA"). (Resp.'s Appx. G; Doc. No. 11 at 5.) In his PCRA Motion, Petitioner alleged that Loreen Kemps, Esquire ("trial counsel"), was ineffective for "[d]enying [P]etitioner his right to testify, not presenting evidence to support involuntary manslaughter, failing to interview witnesses, not requesting mistrials on [the] record, and failing to perform to the standards of Strickland." (Resp.'s Appx. G at 3; Doc. No. 11 at 5-6.)

On December 5, 2008, the PCRA court appointed Robert P. Brendza, Esquire ("Mr. Brendza") to represent Petitioner. (Resp.'s Appx. A at 21.) Mr. Brendza subsequently filed an amended PCRA Petition alleging three reasons why Petitioner's trial counsel was ineffective: (1) trial counsel "pursued a defense theory that was unsound and therefore tactically and strategically unreasonable[;]" (2) [Petitioner] "wanted to testify at trial on his own behalf but was prevented from doing so because of the defense theory used by trial counsel[;]" and (3) "Trial counsel failed to call . . . witnesses to testify at trial," after Petitioner provided their names to trial counsel and explained that they were willing to testify on his behalf. (Resp.'s Appx. H ¶ 6.)

On June 17, 2009, Judge Gavin held an evidentiary hearing on the amended PCRA petition and denied it on August 12, 2009. (Doc. No. 11 at 6-7.) The Superior Court affirmed denial of the amended PCRA petition on December 14, 2010. (Id. at 7.) Petitioner subsequently filed a pro se Petition for Writ of Habeas Corpus with this Court on May 19, 2011. (Doc. No. 1.) The Petition sets forth two general grounds for relief: (1) Petitioner was deprived of his Sixth Amendment right to effective assistance of counsel when trial counsel chose to pursue an actual innocence defense rather than a self-defense strategy; and (2) Petitioner was deprived of his Sixth Amendment right to effective assistance of counsel when trial counsel failed to allow him to

testify on his own behalf. (Doc. No. 1 at appended pages 9-10.) In his reply brief, Petitioner has expanded the list to four, rather than two, grounds for relief: (1) trial counsel's failure to act as a loyal advocate; (2) trial counsel's pursuance of an unreasonable and deficient trial strategy; (3) trial counsel's failure to allow Petitioner to testify on his own behalf; and (4) trial counsel's failure to call witnesses for the defense. (Doc. No. 10 at 3.) In his Report and Recommendation, Judge Strawbridge found that these four claims of ineffective assistance of counsel were sufficiently subsumed under Petitioner's two general grounds for relief listed in his original petition. (Doc. No. 11 at 11-12.) This Court agrees.

Respondent argues that the petition should be denied as the state court proceedings "did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law[.]" (Doc. No. 7 at 9.) According to Respondent, Petitioner failed to establish that trial counsel's assistance was ineffective, so Petitioner's claims should be dismissed on the merits. (Id.)

## III. STANDARD OF REVIEW

### A. 28 U.S.C. § 2254 Review

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief is precluded on:

> any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This is a deferential standard of review. When the state court has not adjudicated a petitioner's claims on the merits, however, the appropriate standard of review for a

4

district court to apply is de novo. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000). Regardless of whether a petitioner's claims were adjudicated on the merits, factual determinations made by a state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010); Thomas v. Horn, 570 F.3d 105, 116 (3d Cir. 2009).

      **B.**      **De Novo Review of Objections to Report and Recommendation**

Pursuant to 28 U.S.C. § 636(b)(1)(B) and local rules of court, a district judge may designate a magistrate judge to file proposed findings and recommendations. Any party may file written objections in response. Id. § 636(b)(1)(C). In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs Petitioner's objections to a magistrate judge's report and recommendation. Under this Rule, Petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections[.]" Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012) (quoting Local R. Civ. P. 72.1.IV(b)). With respect to pro se litigants, however, this rule is relaxed. See McCabe v. Pennsylvania, 419 F. Supp. 2d 692, 695 (E.D. Pa. 2006) (treating pro se litigant's letter to court as objection triggering de novo review, "[a]lthough Petitioner did not file formal objections to the Report and Recommendation"). The district judge "shall [then] make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The judge] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). The Third Circuit has "assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before

5

adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also Miller v. Astrue, No. 10-2247, 2012 WL 2500326, at *4 (E.D. Pa. June 29, 2012).

## IV. DISCUSSION

### A. Local Rule 72.1.IV(b)

Though Local Rule 72.1.IV(b) requires Petitioner to "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections[,]" Petitioner only refers to Judge Strawbridge's Report and Recommendation in one instance and fails to identify which specific findings he objects to, let alone provide a basis for those objections. (See Doc. No. 15.) Instead, Petitioner merely reiterates the same arguments found in his amended PCRA petition (Resp.'s Appx. H), his Petition for a Writ of Habeas Corpus (Doc. No. 1), and his reply brief to Respondent's Answer (Doc. No. 10). Despite this lack of formal objections in accordance with the local rule, the Court will construe Petitioner's reply brief as objecting to the Report and Recommendation, since Local Rule 72.1.IV(b) is more leniently applied to pro se litigants like Petitioner. See McCabe, 419 F. Supp. 2d at 695.

In his reply, Petitioner restates the grounds for relief sought in his amended PCRA petition filed by his former counsel, Robert P. Brendza, Esquire. Specifically, Petitioner seeks relief based on trial counsel's alleged: (1) use of an unreasonable and deficient trial strategy, (2) failure to allow Petitioner to testify on his own behalf, and (3) failure to interview and call witnesses for the defense. (Doc. No. 15 at 4-14.) Petitioner also contends that trial counsel failed to act as a loyal advocate, but he does not put forth any additional evidence in support of

that argument. (See id. at 3.)[1]

### B. Standard for Ineffective Assistance of Counsel Claims

To evaluate Petitioner's three claims of ineffective assistance of counsel in violation of his Sixth Amendment right, the court must apply a two-prong test enunciated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Under this standard, trial counsel is presumed to have acted reasonably and effectively unless Petitioner can show that: (1) trial counsel's "representation fell below an objective standard of reasonableness[;]" and (2) there was a "reasonable probability that, but for [trial counsel's] unprofessional errors, the result of the proceeding would have been different." Id. at 687-88, 694. "Judicial scrutiny of counsel's performance must be highly deferential . . . [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. To overcome the presumption of sound trial strategy, "[P]etitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005).

Here, we are presented with issues involving the second prong of the ineffective assistance of counsel test because each of Petitioner's three objections stem from trial counsel's decision to pursue an "actual innocence" defense. Petitioner begins by arguing that this defense strategy was unreasonable. (Doc. No. 15 at 4-7.) Instead, he wanted to pursue a strategy of self-

---

[1] Petitioner only mentions this objection in one instance, simply listing it as one of his four grounds for relief. This argument is not discussed further in the reply brief. (Doc. No. 15 at 3.) Therefore, the Court will treat this objection as waived.

defense and to testify personally that he acted in self-defense. (Id. at 8.) Because trial counsel pursued an actual innocence defense, Petitioner argues that counsel was ineffective for interfering with his right to testify, since he could not take the stand and testify as to self-defense. (Id. at 9.) Lastly, Petitioner alleges that trial counsel was ineffective for failing to call six witnesses to testify in support of his self-defense theory. (Id. at 11-12.) The court will discuss each objection in turn.

### 1. Trial Counsel Pursued A Sound Defense Strategy

First, Petitioner argues that trial counsel was ineffective for pursuing an unreasonable and deficient defense strategy. (Doc. No. 15 at 4-7.) Specifically, he alleges that trial counsel provided ineffective assistance based on the decision to argue that Petitioner was actually innocent of the crimes levied against him rather than argue he acted in self-defense. (Id.) The PCRA court held a lengthy evidentiary hearing regarding the merits of this claim, which included testimony from Petitioner, his father, and trial counsel. (Resp.'s Appx. I.)

At the hearing, Petitioner acknowledged that he had met with trial counsel multiple times before trial and had discussed potential defense strategies with her. (Id. at 4-5.) He also explained that when he told trial counsel about his desire to pursue a self-defense strategy, she advised him it was not ideal, given the Commonwealth's evidence and the fact that Petitioner's criminal record could be brought out at trial. (Id. at 12-13.) Likewise, trial counsel testified that she discussed the pros and cons of this strategy with Petitioner. (Id. at 6.) She acknowledged that self-defense was one of two potential strategies they considered pursuing at trial. (Id.) Given these two options, trial counsel reserved her opening statement until after the Commonwealth had presented its case. (Id. at 7-8.)

By that point, trial counsel felt that she had identified enough weaknesses in the Commonwealth's case that it would be best to pursue an actual innocence, or lack of proof, defense rather than argue that Petitioner had acted in self-defense. (Id. at 8-9.) For example, trial counsel explained that the Commonwealth had failed to establish any motive for committing the crime and therefore recommended to Petitioner that he not pursue self-defense, since the evidence would reveal hostility between the victim and Petitioner and potentially would give rise to a motive. (Id.) Trial counsel testified that Petitioner agreed with her recommendation regarding an actual innocence defense strategy. (Id. at 19-20.) After considering the merits of the testimony at the PCRA hearing, Judge Thomas G. Gavin concluded:

> Fundamental to my analysis is a credibility determination as to whose version of what trial strategy should have been followed is believable. [Petitioner] NOW says he wanted to testify and that counsel's strategy precluded his doing so. However, when the issue of strategy was raised by the Assistant District Attorney who even MOUTHED the MAGIC "ineffectiveness of counsel" PHRASE, he, [Petitioner], stood mute. He remained mute at the very point where ALL the evidence the jury was going to consider was in and if he truly felt his counsel's strategy had been inappropriate, all he had to do was speak up. I conclude he did not, as his silence tacitly recognized that his counsel's strategy was sound. . . . I conclude that he, like [trial counsel], believed the strategy chosen to have been correct. The fact that it was ultimately not successful does not NOW render it unreasonable.

(Resp.'s Appx. J at 13-14 (emphasis in original).)

To rebut the presumption that trial counsel acted reasonably, Petitioner must demonstrate that trial counsel's actions could not be considered part of a sound strategy. See Thomas, 428 F.3d at 499. In this case, it was not unreasonable for trial counsel to pursue an actual innocence, or lack of proof, defense. In fact, trial counsel specifically withheld her opening statement in order to reserve the best potential defense until after the Commonwealth put forth its case. Based on perceived weaknesses in the Commonwealth's case and the fact that a self-defense strategy

9

could provide the basis for a motive and bring out Petitioner's criminal history, trial counsel decided it was best to pursue a defense of the failure of the Commonwealth to prove its case. Because this decision is a sound strategy, the Court does not find that trial counsel's actions were unreasonable. Thus, Petitioner's first claim of ineffective assistance of counsel fails.

### 2. Trial Counsel Was Not Ineffective For Recommending That Petitioner Not Testify At Trial

Since trial counsel's trial strategy was not unreasonable, Petitioner's additional claims here also fail because they each stem from the chosen defense strategy. For example, Petitioner argues that because trial counsel decided to pursue an actual innocence defense, he was prevented from testifying on his own behalf. (Doc. No. 15 at 9.) Had the Petitioner testified, he would have stated that he did in fact shoot the victim, albeit in self-defense during a struggle. (Resp.'s Appx. J at 13.) Additionally, his testimony would have provided the basis for a motive, since he would have acknowledged that there had been bad blood between himself and the victim. (Id.) Lastly, had Petitioner testified regarding self-defense, part of his prior criminal record would have been admissible.

In his reply to Judge Strawbridge's Report and Recommendation, Petitioner does not allege that trial counsel herself prevented him from testifying. (Doc. No. 15 at 8.) Instead, he explains that the chosen defense strategy prevented him from testifying he acted in self-defense. (Id.) Because trial counsel's decision to pursue an actual innocence strategy was sound, it was not unreasonable for her to advise Petitioner not to testify he acted in self-defense. Therefore, Petitioner's second claim of ineffective assistance of counsel fails as well.

### 3. Trial Counsel Was Not Ineffective For Failing To Call Witnesses To Testify About Petitioner Acting In Self-Defense

Lastly, Petitioner argues that trial counsel was ineffective for failing to interview and call witnesses for the defense. (Doc. No. 15 at 11-14.) Again, this claim fails, as it stems from trial counsel's decision to pursue an actual innocence defense, which was not unreasonable. In his reply to the Report and Recommendation, Petitioner lists six potential witnesses that he argues should have been called to support his claim of self-defense. (Id. at 12.) Five of the six[2] witnesses would have testified in support of Petitioner's self-defense strategy. (See id.) However, because trial counsel pursued an actual innocence defense, testimony regarding self-defense would not have enhanced the chosen strategy. Thus, the decision not to call these witnesses was not unreasonable, and this claim also fails.

## V. CONCLUSION

For the foregoing reasons, the Court will approve the Report and Recommendation (Doc. No. 11) and deny Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1). A certificate of appealability will not be issued.

An appropriate Order follows.

---

[2] Petitioner states that the sixth witness observed the altercation between Petitioner and the victim and was present when the shooting occurred. (Doc. No. 15 at 12.) It is unclear from Petitioner's reply to the Report and Recommendation whether this witness would have testified that Petitioner acted in self-defense.